## SMITH *vs.* BRAGG.

1. On the hearing of a writ of *habeas corpus* brought by a father on account of the detention of his child, he is not entitled as matter of right to its custody, but the matter is in the discretion of the court, on hearing all the facts.

2. Such discretion is vested in the court hearing the *habeas corpus* and not in a reviewing court.

3, Even if the judge of the superior court should disagree with the ordinary on the facts involved in the trial of a *habeas corpus* case, on *certiorari,* the case should be remanded for a new trial, and not finally adjudicated by the reviewing court.

(*a.*) The ordinary did not abuse his discretion in this case, and the superior court erred in reversing his finding.

Parent and Child. *Habeas Corpus. Certiorari.* Practice in Superior Court. Before Judge POTTLE. Elbert Superior Court. September Term, 1881.

Reported in the decision.

P. W. DAVIS; H. A. ROEBUCK; L. E. BLECKLEY, for plaintiff in error.

WORLEY & CARLTON, for defendant.

JACKSON, Chief Justice.

Bragg, the defendant in error, and his wife parted. She took the child of the marriage, an infant, with her to her brother's, Smith's, the plaintiff in error. The child remained there, with the tacit consent of the father, until the mother's and afterwards the grandmother's death; and when it got to be nine years old the father brought *habeas corpus* for it, against Smith, the uncle, before the ordinary. The ordinary left the child with the uncle. On *certiorari*, the superior court reversed the ordinary and awarded the child to the father, and this judgment is the error assigned.

It is in proof that the father spent nothing to support the child; that the aunt, Mrs. Smith, raised it from her own breast, and she and her husband loved it as their own; and no complaint is made in regard to its treatment. The ordinary, as a *habeas corpus* court, exercised his discretion on the facts, and the question is, did he abuse that discretion, if the law vested it in him in such a case—that is, in a case where the father demanded the custody of his own child.

1. By our law the father is not entitled of right to the custody of his child, but on *habeas corpus* that custody is within the discretion of "the court, on hearing all the facts." Code, §4024.

That section, taken from the act of 1845, Cobb, p. 335, is as follows: "In all writs of *habeas corpus* sued out on account of the detention of a wife or child, the court, on hearing all the facts, may exercise its discretion as to whom the custody of such wife or child shall be given,

v 68—43

and shall have power to give such custody of a child to a third person." Such, too, is the spirit of sections 1733 and 1794.

2. What court is to have and exercise this power and discretion? Certainly it is the *habeas corpus* court first exercising jurisdiction, and not the reviewing court. 34 *Ga.*, 99; 59 *Ib.*, 555. True, those cases are where the primary court was the superior and this the reviewing court; but the principle is the same when the ordinary is the primary and the superior the reviewing court. 60 *Ga.*, 456. There the judgment of the superior court was reversed because that court did not allow the justice's court discretion on disputed facts, but sustained a *certiorari* and overruled the magistrate's judgment. If the magistrate's discretion on facts involving fifty dollars is controlling, much more is that of the ordinary controlling when sitting as a *habeas corpus* court and expressly invested with discretionary powers by the statute.

3. Even if the superior court disagreed with the ordinary on facts, it had no power to pass a final judgment, but should have sent the case back for a new trial on the facts. · Code, §4067; 60 *Ga.*, 100; 63 *Ib.*, 331, 743; 65 *Ib.*, 600; 58 *Ib.*, 142; 62 *Ib.*, 345. So that in that view the final judgment of the superior court was wrong.

But the facts, we think, are with the ordinary. Certainly his discretionary powers were not abused. The mother confided the child on her death bed to her brother and sister, and the only thing which disturbed the peace of her death was the apprehension that her husband might get the control of her child. He had abandoned it to her and her relations with no legal steps to recover the boy until he might be useful to labor, and with no contribution to his infantile support. He had married again, and the voice of the dying mother should have controlled rather than that of the father, who had not helped to raise the boy. It matters not that he said his wife left him without cause. Her voice was still in death, and she could not give her version of that controversy.

The ordinary left the boy with her at whose breast he was nourished, a sucking child, and with him who supported the child and raised him to young boyhood, and to both who loved him as their own children.

It is right that he remain with them.

Judgment reversed.